IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| STACEY WELLINGTON, | ) | Case No. 1:19-cv-0938 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| v. | ) | |
| | ) | |
| LAKE HEALTH SYSTEM, INC., *et al.*, | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |
| | ) | |

Defendant Lake Health System, Inc. ("Lake Health") filed a motion for sanctions, in which Defendant Phillip Brooks later joined, alleging spoliation of evidence and false deposition testimony by Plaintiff Stacey Wellington. ECF Doc. 55; ECF Doc. 63. Because the court found that there were factual disputes related to Lake Health's allegations of spoliation, it conducted an evidentiary hearing on September 13, 2019. ECF Doc. 62.

The evidence submitted before, at and after the evidentiary hearing does not establish that Wellington destroyed or concealed her cell phone with a culpable state of mind. Nor does the evidence show that Wellington made deliberately false and prejudicial statements during her deposition. For these reasons, the court DENIES Lake Health's motion for sanctions. ECF Doc. 55.

I.      **Procedural Background**

This matter arises out of Wellington's employment at Lake Health during the six-week period between August 21, 2018, and October 5, 2018. ECF Doc. 55-1 at 1. On November 21,

2018, Wellington and her husband filed this lawsuit in the Ohio Court of Common Pleas, asserting claims of sexual harassment and wrongful termination. ECF Doc. 1-2. Phillip Brooks, Lake Health, and two of Lake Health's affiliated organizations were named as defendants. ECF Doc. 1-2. Lake Health and its affiliated organizations removed the case to federal court on April 25, 2019, and the parties subsequently consented to my jurisdiction. ECF Doc. 1; ECF Doc. 6. On June 24, 2019, Wellington filed an amended complaint asserting additional claims, omitting her husband as a party and naming two additional organizations affiliated with Lake Health as defendants. On July 2, 2019, Lake Health filed its answer and a counterclaim for spoliation of evidence. ECF Doc. 36. Brooks filed his answer on July 8, 2019. ECF Doc. 39. The parties are currently conducting discovery and have repeatedly displayed their inability to cooperate in that process and have sought the court's assistance to resolve their discovery disputes.

## II.   History of the Instant Discovery Dispute

The parties' current discovery dispute centers around text messages between Wellington and Shelley Lamp, an individual who worked with and trained Wellington at Lake Health.[1] ECF Doc. 55-1 at 2 & n.1. Lake Health assumes that those messages are stored on Wellington's Lake Health-issued phone, which Lake Health alleges she destroyed or somehow immobilized in order to conceal the messages. ECF Doc. 55-1 at 9. Wellington contends that she returned the phone and that Lake Health has misplaced it. ECF Doc. 60 at 3.

Lake Health first requested the text messages at issue on February 21, 2019, when it served its first set of requests for production on Wellington. ECF Doc. 55-4. Lake Health requested that Wellington

---

[1] On September 27, 2019, Ms. Lamp's deposition was taken. Ms. Lamp's cellphone and the relevant text messages have also become unavailable for discovery because her cellphone "died." However, Ms. Lamp testified regarding the general content of the text messages and other discussions with Wellington. See ECF Doc. 74.

2

> [p]roduce all correspondence (including but not limited to emails, text messages, and social media posts or messages) between [herself] and Shelley Lamp from January 1, 2018 to present.

ECF Doc. 55-5 at 7 (Request for Production No. 8). Wellington responded that she had "[n]one in her possession," that the correspondence was "[i]n Lake Health's system," and that she was "no longer in possession of the Lake Health cell phone." *Id.* Later, at her July 25, 2019, deposition, Wellington indicated that she had possession of those messages and stated, "All of the messages that I have from Shelley Lamp I have turned over to my attorneys." ECF Doc. 55-12 at 2. When Lake Health followed up with counsel for Wellington, however, counsel represented to Lake Health that "[Wellington] has once again checked and determined that there were no text messages retained between herself and Shelley Lamp." ECF Doc. 55-9.

Lake Health continued to request the messages, contacting Lamp through counsel at the organization where she worked. ECF Doc. 55-10 at 1. Counsel for Lamp informed Lake Health that Lamp's phone had died so she no longer possessed any messages stored on that device. *Id.* At that point, on August 12, 2019, Lake Health again reached out to counsel for Wellington renewing its request for the messages and also requesting that Wellington explain why she did not retain the messages. *Id.*

Eventually, Lake Health developed a suspicion that Wellington was still in possession of her phone and acquired records for that phone from Verizon Wireless. ECF Doc. 55-11. The records revealed that Wellington had used the phone between the date of her termination in October 2018 and until February 2019. *Id.* at 1-12. The records also showed that, from October 1-3, 2018, Wellington made calls on that phone from Florida, *id.* at 2, which Lake health took to contradict Wellington's deposition testimony that she was home sick during those days. ECF Doc. 55-12 at 2. Lake Health then filed the instant motion for sanctions. ECF Doc. 55.

3

Wellington disputes Lake Health's suspicions and explains that she repeatedly tried to return her phone, but Lake Health never gave her clear instructions on how to return it. ECF Doc. 60 at 4-7. She asserts that Lake Health's most recent instruction was to leave the phone at the "security office." *Id.* at 6. Wellington claims that she acquired a new personal phone in February 2019, and shortly after, when she and her husband happened to be near Lake Health's SOM Center Road facility, she dropped her work-issued phone at the reception desk on the third floor of that building. *Id.* at 7. She did not recognize the receptionist and described her as an older, Caucasian woman. *Id.*

Based on Lake Health and Wellington's competing accounts, the court found that there were factual disputes and scheduled an evidentiary hearing. ECF Doc. 62.

## III. Evidentiary Hearing

On September 13, 2019, the court held an evidentiary hearing during which it heard testimony from eight witnesses.[2] ECF Doc. 65. Karin Chiofolo testified that, in February and March 2019, she was the primary receptionist on the third floor of the Lake Health building where Wellington claims to have returned her Lake Health-issued phone. Chiofolo explained that she staffed the desk daily from 7:00 AM to 4:00 PM, took fifteen-minute breaks at 10:00 AM and 2:00 PM, and took a half-hour lunch break at 12:30 PM. When Chiofolo took her breaks, a substitute receptionist always filled in for her, ensuring that the reception desk was always staffed except when she stepped away to use the bathroom. On those occasions, Chiofolo would put up a sign indicating the receptionist would return soon. Chiofolo testified that she never saw Wellington in February or March 2019 and never received her cell phone during that

---

[2] To expedite proceedings, the parties stipulated to proffers of various witnesses' expected testimony. In doing so, the parties did not stipulate to the truth of the testimony, only that the witnesses would have offered such testimony upon examination. This order does not distinguish between stipulated testimony and testimony elicited by examination.

time. She further stated that Lake Health searched the reception desk but did not find Ms. Wellington's cell phone.

Jennifer Hester, Victoria Quinones, and Ruth Kanner each testified that she filled in for Chiofolo when she took her breaks and never received Ms. Wellington's cell phone in February or March 2019. Hester identified Wellington and stated that she had not seen her in February or March 2019. Quinones and Kanner did not recognize Wellington but did not see anyone matching her appearance at the reception desk in February or March of 2019.

Robin LaRosa testified that she was in charge of the reception team and that she was responsible for ensuring that the reception desk was always staffed. She testified that, apart from herself and the previous four witnesses, nobody else staffed the reception desk. LaRosa established an unwritten, rotating schedule for Hester, Quinones, and Kanner to fill in during Chiofolo's breaks. LaRosa explained that, although Lake Health also employed temporary workers, none of those workers was assigned to the reception desk in February or March 2019. LaRosa testified she did not personally encounter Wellington and did not receive her phone. None of the women staffing the desk reported receiving a returned phone.

Maria Bongiovanni testified that she supervised LaRosa and the team of receptionists. She testified that nobody on the receptionist team reported the return of a cell phone. Bongiovanni did not see Wellington in February or March 2019. On September 9, 2019, the Monday prior to the evidentiary hearing, Bongiovanni stood at the reception desk while an employee searched it. This search did not uncover any cell phone. Bongiovanni admitted on cross examination that she did not like Wellington.

Deidre Jeschelnig testified that she was the sole IT support assistant responsible for maintaining a spreadsheet tracking all Lake Health-issued phones. Jeschelnig testified that she

5

ordered the phone that was to be assigned to Wellington on August 24, 2018 and delivered it to Wellington on September 7, 2018. She stated that according to the spreadsheet, the phone had not been returned and that Verizon could not track the phone. On cross examination, Jeschelnig stated that she was first contacted about Wellington's phone on August 19, 2019. After receiving the inquiry, Jeschelnig contacted Verizon in an attempt to track Wellington's phone and to obtain its records. Verizon informed Jeschelnig that it was not able to track the phone, and Jeschelnig requested that service to the phone be terminated.

Robert Parris testified he was the director of patient financial services and the person in charge of the floor where Wellington claims to have returned her phone. He reported that his subordinates never reported receiving a returned cell phone or seeing Wellington. Parris also testified that he was the one who ordered the reception desk to be searched, and that, apart from the witnesses who testified before him, no other employees staffed the reception desk. Similar to Bongiovanni, Parris indicated he felt disdain for Wellington.

Wellington testified that she could not recall the physical appearance of the person at the desk when she returned her cell phone. She could not specifically recall but believed that she returned her phone in the afternoon. Wellington testified that her husband was the only one who could corroborate her story, but her husband could not attend the hearing because he was in Tampa, Florida with their kids. Wellington reiterated the account offered in her memorandum in opposition to the motion for sanctions (ECF Doc. 60) and further added that her children had used the Lake Health-issued phone before she acquired a new phone in February 2019. She explained that the 904-798-0642 phone number she produced in her response to Lake Health's Interrogatory No. 6 was not the phone number for the new personal phone she acquired in February 2019. Rather, it was the personal phone she had used while she was employed by Lake

6

Health and until February 2019. Wellington also testified that on October 1 and 2, 2018, she worked remotely from Florida and that on October 3, 2018, she called in sick. She felt she was permitted to work remotely because other employees had done so, and she was never informed that she could not do so.

**IV. Law and Analysis**

    **A. Alleged Spoliation of Cell Phone Evidence**

        **1. Applicable Law**

Courts have the "inherent power to control the judicial process."[3] *Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009) (quoting *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001)). Among those powers is the ability to impose sanctions for spoliation of evidence. *Id.* A court may impose sanctions if the moving party establishes: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind'; and (3) that the destroyed evidence was 'relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.'" *Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 553 (6th Cir. 2010).

Courts have broad discretion in crafting sanctions; still, "a proper spoliation sanction should serve both fairness and punitive functions." *Id.* (citing *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995)). This means that an appropriate sanction is one that both "level[s] the evidentiary playing field," *Vodusek*, 71 F.3d at 156, and has been calibrated according to the degree of fault. *Crown Battery Mfg. Co. v. Club Car, Inc.*, 185 F. Supp. 3d 987, 999 (N.D. Ohio 2016).

---

[3] The court notes that Fed. R. Civ. P. 37 may also form a basis for sanctions. However, Lake Health does not argue for sanctions under Rule 37, so the court shall not consider the issue.

Wellington argues that the court should apply a clear and convincing standard to the evidence submitted at the evidentiary hearing. ECF Doc. 73 at 3-4. However, Wellington concedes that "the burden of proof on a motion for spoliation is unsettled." *Jenkins v. Woody,* No. 3:15CV355, 2017 U.S. Dist. LEXIS 9581at *31-32 (E.D. Va. Jan 21, 2017). Defendants have made no argument concerning the applicable standard of review. The court's own research has not resulted in a clear answer about the standard of review to apply. However, considering the severe sanctions requested by defendants, the court finds that the clear and convincing standard is appropriate. Clear and convincing evidence "produces in [the] mind a firm belief or conviction as to the matter at issue." *Holmes v. United States Bank,* No. 1:07-cv-695, 2009 U.S. Dist. LEXIS 49766 at *n.4 (S.D. Ohio May 28, 2019) (internal citations omitted).

### 2. Parties' Contentions

Lake Health argues that sanctions should be imposed and advocates for the most severe sanction available: dismissal with prejudice and an award of costs and fees. ECF Doc. 55-1 at 15. Alternatively, Lake Health suggests that the court should grant summary judgment on its spoliation counterclaim, give a mandatory adverse inference jury instruction, and award costs and fees. ECF Doc. 55-1 at 12-13. Lake Health insists that Wellington's failure to produce text messages and her "intentional[] and persistent[] lie[s] about her use and possession" of her Lake Health-issued phone lead to the conclusion that Wellington intentionally concealed or destroyed her phone. ECF Do. 55-1 at 9, 12.

Wellington responds that Lake Health has not established the required elements for sanctions. ECF Doc. 60 at 15. She argues that she neither possesses nor destroyed the Lake Health-issued phone because she returned it to Lake Health. *Id.* at 16. She explains that Lake Health did not diligently seek return of her phone, and that she believes Lake Health simply

8

misplaced the phone after she returned it. *Id.* at 3, 16. Wellington contends that because she did not destroy the phone, she cannot possess a culpable state of mind. *Id.* at 17. Finally, she asserts that Lake Health has not shown the missing messages would support its defenses and that, to the contrary, the messages support her own case. *Id.* at 17-18.

Lake Health replies that Wellington's account of how she returned the phone is flawed and implausible. ECF Doc. 61 at 2-3. It argues that Wellington's statements are inconsistent with statements made by her counsel, who represented both that Wellington was not in possession of any messages and that all messages had been turned over (implying that copies of the messages could only have been made from a phone one would have possessed). *Id.* at 6-7. Lake Health states it has received only a single screenshot of a message between Wellington and Lamp. *Id.* at 7. Lake Health further argues that Wellington has demonstrated a pattern of spoliation of evidence and that Lake Health's alleged lack of diligence in seeking return of the phone is not relevant to whether Wellington had control of the phone and an obligation to preserve evidence it contained. *Id.* at 10-12.

Following the evidentiary hearing, Wellington filed a Closing Brief. ECF Doc. 73. She points out that her testimony at the hearing was consistent with her affidavit; Lake Health did not try to locate her cell phone until mid-August 2019; and it did not search the reception desk until shortly before the hearing. She contends that defendants did not introduce any evidence showing that the information on her cell phone was relevant to Lake Health's claims or defenses. She argues that Lake Health failed to establish that she destroyed her cell phone by clear and convincing evidence. She further argues that the sanctions requested by Lake Health are inappropriate.

Lake Health also filed a post-hearing brief. ECF Doc. 74. Lake Health argues that Wellington's story about returning her cell phone is not credible. Lake Health questions why Wellington would have destroyed her cell phone and why she downplays the importance of her text messages with Shelly Lamp. Shelly Lamp's deposition was taken on the day Lake Health filed its post-hearing brief. Lake Health argues that Lamp's testimony contradicts some of Wellington's statements. Lake Health contends that the hearing evidence established, at the very least, that Wellington had attempted to hide substantive text messages that were harmful to her case by showing that she deleted two different "lol" texts.

### 3. Analysis

The primary issue raised in the motion for sanctions is whether Wellington destroyed, disposed of or has concealed her work-issued cell phone with a culpable state of mind in order to get rid of evidence relevant to Lake Health's defenses or claims. The determination of that issue hinges upon the credibility to be assigned to Wellington's version of events.

After considering the evidence submitted by the parties before during and after the hearing, the court has grave reservations about the veracity of Wellington's version of what happened to her Lake-issued cell phone. Lake has captured the reasons which put the credibility of Wellington's story in doubt: Wellington knew the phone had text message communications at a time when she had initiated her claims against the hospital. After not receiving a mailing label/envelope to return the phone, she was told to take it to a security office at the hospital. She did not. Instead, she asserts she took the phone to a medical office building and left it with an unidentified person without obtaining a receipt or even that person's name. She claims she took these steps almost on a whim while in the neighborhood. Wellington's laissez faire attitude

toward the phone is in sharp contrast to the steps she took to carefully return her hospital-issued computer. In short, the court finds her story to be unbelievable.

A separate issue arises as to whether Wellington's failure to preserve the cell phone was done with a clear and convincing intent to destroy or make evidence unavailable. Wellington claims her communications with Ms. Lamp were strictly innocuous. Lake claims otherwise, indicating through the Lamp affidavit, that Wellington and Lamp discussed employment-related matters. Lake asserts that the absence of any contemporaneous Wellington complaint about harassment by Defendant Brooks would be relevant to the issue of whether the harassment actually occurred. Lake asks the court to infer that Wellington knew she had said nothing about harassment to Lamp and that she knew that if Lake discovered the absence of such communications it would be detrimental to her case or helpful to Lake's defense. However, Lake offers no evidence to substantiate the requested inferences. It argues that Wellington's testimony about the innocuous content of the text messages was false. But that is merely an argument. An equally tenable construction is that Wellington did not remember anything of importance in the text messages, particularly if she and Lamp never discussed Brooks' alleged harassment. Lake has not directed the court's attention to any direct or circumstantial evidence supporting its contention that Wellington acted maliciously. Upon the record before the court, Lake has not met its burden to establish by clear and convincing evidence that Wellington acted with the malicious intent necessary to warrant the imposition of sanctions.

It bears mention that any prejudice Lake claims to have suffered was partly caused by Lake's own lack of diligence in seeking or obtaining the return of Wellington's phone. It is nearly inconceivable that an organization sophisticated enough to provide cell phones to employees, and which has a staff member charged with the responsibility to track such devices,

would have failed to request the return of a cell phone upon an employee's termination. And, even if the actual device was not demanded, it is equally inconceivable that the organization would not have taken steps to discontinue service to the phone. The implausibility of these two points is greatly heightened in the context of a former employee initiating discrimination proceedings against the employer before the EEOC. Even if the hospital's inexplicable inattention to the Wellington cell phone could somehow be justified, Lake's more recent failure to timely respond to the request from Wellington's attorney to provide a mailing envelope or label is baffling. Instead of sending the label as requested, Lake simply instructed Wellington to drop the phone off at a "security office" in the hospital. Essentially, Wellington claims to have done that, albeit at a desk of her own choosing. And now, Lake Health complains that she failed to follow Lake's less-than-careful plan for the return of the phone.

In short, in regard to the cell phone issue, the court finds Lake Health has not met its burden of proof to establish a right to the imposition of sanctions. Some of the prejudice Lake Health has suffered was self-inflicted. Indeed, the court finds both Wellington and Lake Health to be equally responsible for the failure to preserve evidence that each was in a position to control and protect. Even so, the claimed prejudice is not fatal to Lake Health's defense. First, Lake Health has Lamp's testimony indicating Wellington did not complain about harassment by Brooks around the time she commented about her job. Second, Lake still can request that either Wellington or Lamp provide lawful consent – as the originator or intended recipient of the text messages – to authorize Verizon Wireless to produce the content of the text messages under the authority of 18 U.S.C. § 2702(b)(3).

This situation is reminiscent of the scene in Romeo and Juliet when Mercutio, dying as a result of the feud between the Capulet and the Montague houses, raged: "A plague 'o both your

houses." But here, it is not a fictional character who has suffered. Instead, the parties have suffered a plague because they have been consistently unwilling or unable to cooperate in getting their discovery completed efficiently. Counsel have acted in a spirit of accusation and suspicion rather than cooperation and professionalism. The parties have been required to expend tens of thousands of dollars in search of evidence that each easily could have preserved. Not only that, the court has been required to utilize precious resources to resolve a dispute that the parties should have been able to handle on their own – and can still resolve – with the execution of a suitable consent form.

Because Lake Health has failed to establish the necessary elements for sanctions related to the alleged spoliation of evidence, the court must DENY the motion for sanctions based on the alleged spoliation of the cell phone evidence. ECF Doc. 55.

### B. Wellington's Deposition Testimony

Lake Health also argues that Wellington should be sanctioned because she gave false deposition testimony concerning her whereabouts in October 2018. Courts may exercise their inherent authority to manage litigation to dismiss cases for other litigation abuses such as providing false deposition testimony. *See Ndoye v. Major Performance LLC*, No. 1:15-cv-380, 2017 WL 822110, at *10 (S.D. Ohio Mar. 1, 2017) (identifying instances where courts issued sanctions for providing false deposition testimony among other abuses). Lake Health urges the court to apply that authority here, arguing that Wellington lied about being home sick from October 1-3, 2018, in her deposition. ECF Doc. 55-1 at 13; ECF Doc. 55-12. Lake Health asserts that Wellington made the same false statement in her second amended complaint. Lake Health argues that this false allegation was prejudicial because, had the truth been known, Lake Health could have argued that it would have fired Wellington, even absent retaliation or other

13

discriminatory conduct.  ECF Doc. 55-1 at 13-14.  Wellington responds that she never lied about her whereabouts but truthfully reported that she worked remotely.  ECF Doc. 60 at 18.

Wellington's deposition testimony is not sanctionable.  The court initially notes that Lake Health is incorrect in asserting that Wellington's second amended complaint alleges that she was home sick from October 1-3, 2018.  Rather, her complaint states that "[o]n October 1 and 2, 2018, plaintiff worked remotely because she was recovering from strep throat," and "[o]n October 3, 2018, Plaintiff did not work due to her illness."  ECF Doc. 34 at ¶¶ 36-37.  Wellington's second amended complaint does not allege that she was home.

Neither has Lake Health convinced the court that Wellington acted as maliciously and deliberately as it suggests in its motion.  In response to a question at her deposition, Wellington affirmed that she was "at home sick," not just that she was working remotely as she alleged in her complaint.  ECF Doc. 55-12 at 2.  And the fact that Wellington was in Florida at the time may call into question whether she was really sick.  ECF Doc. 55-11 at 2.  However, her deposition statement was not in response to direct questions about her whereabouts from October 1-3, 2018.  Rather, her statements were offered during an exchange about an email Wellington wrote regarding an interview.[4]  ECF Doc. 55-11.  Wellington mentioned that she was sick while she was describing a call she made, and the deposing attorney followed up.  *Id.*  It was only at the prompting of deposing counsel's leading question that Wellington said, "Yeah" when asked whether she was "at home" sick.  *Id.* ("Q: Oh, you were at home sick?  A: Yeah.").  The court cannot conclude that Wellington's mere presence in Florida is proof she was not sick, nor that her single-word response to a leading question is sanctionable false testimony.

---

[4] Because Lake Health only excerpted three pages from the transcript, the court is not aware of the full context of the exchange.  Nonetheless, it is clear that Wellington's absence from the office on October 1-3, 2018, was not the focus of the exchange.

Even if the court could find that Wellington's deposition testimony was sanctionable, it would not be proper for the court to issue the sanctions requested by Lake Health. At the time Lake Health fired Wellington, it was not aware she was in Florida from October 1-3, 2018. Lake Health only learned of her whereabouts in August 2019, when it acquired Wellington's phone records from Verizon Wireless. ECF Doc. 55-1 at 5-6. This after-the-fact acquisition of information and Wellington's earlier testimony about it had zero bearing upon Lake Health's reasons for terminating Wellington's employment in October 2018. Wellington's testimony did not prejudice Lake Health and the sanctions it requested were disproportionate to the alleged false statement. No sanctions on this issue are justified.

**V.     Conclusion**

It is not uncommon for parties to suspect dishonesty from their opponents during discovery. And, when available evidence is not properly produced in the discovery process, parties commonly request that the court preclude the use of previously-undisclosed evidence at trial or the other consequences listed in Fed. R. Civ. P. 37. Here, during the discovery phase of litigation, Lake Health requests that the court conclusively find that Wellington has lied – not once – but on several occasions. Based on that finding, Lake Health requests a dismissal of Wellington's case and/or summary judgment on its counterclaim. The evidence does not support such a blanket finding or the disproportionate sanctions requested by Lake Health. Rather, the questionable statements made by Wellington in her deposition and in response to Lake Health's inquiries regarding her cell phone are the type of statements that *may* be admissible at trial as relevant to her credibility.

Because Lake Health has failed to establish the necessary elements for sanctions related to the alleged spoliation of evidence and/or allegedly false deposition statements, the court

DENIES the motions for sanctions filed by Lake Health and Defendant Brooks.  ECF Doc. 55, ECF Doc. 63.  The attorneys are encouraged to cooperate with one another to complete discovery in this case.

**IT IS SO ORDERED.**

Dated: October 4, 2019

                                                  Thomas M. Parker
                                                  United States Magistrate Judge