IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| STACEY WELLINGTON, | ) | Case No. 1:19-cv-0938 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | THOMAS M. PARKER |
| | ) | |
| LAKE HOSPITAL SYSTEM, INC, et al., | ) | |
| | ) | **MEMORANDUM OPINION** |
| Defendants. | ) | **AND ORDER** |
| | ) | |
| | ) | |

## I.    Introduction

This lawsuit stems from a brief employer-employee relationship between Plaintiff Stacey Wellington, her supervisor, Defendant Phillip Brooks, and Defendant Lake Hospital System, Inc., *et al.* ("Lake Health).  After her employment and educational privileges were terminated, Wellington filed a complaint asserting sixteen different claims against defendants (ECF Doc. 34) and Lake Health filed a single count counter-claim against Wellington.  ECF Doc. 36.  On December 3, 2019, defendants moved for summary judgment on all but one of Wellington's claims.  ECF Doc. 95.  This action is before the magistrate judge for final disposition by the parties' consent, pursuant to 28 U.S.C. § 636.  ECF Doc. 24.

Because there are no genuine disputes of material fact and the defendants are entitled to judgment as a matter of law, the court must GRANT summary judgment in favor of defendants on the following claims:  Count I – Wrongful Termination, Whistle Blower pursuant to Ohio Rev. Code § 4113.52;  Count II – Wrongful Termination, Whistle Blower;  Count IV -

Retaliation/Reporting Harassment under Ohio Rev. Code § 4112, et seq.;  Count V – Retaliation

under Title VII;  Count VII – Civil Conspiracy;  Count X – Fraud in the Inducement;  Count XII

– Breach of Contract; and Count XIII – Intentional Infliction of Emotional Distress.

Because defendants have not met the burden of showing that there are no genuine

disputes on material facts, the court must DENY them summary judgment on the following

claims: Count III – Sexual Harassment/Gender Discrimination;  Count VI – Negligent

Hiring/Retention;  Count VIII – Tortious Interference with Contractual Relationship;  Count IX –

Tortious Interference with Business Relationships;  Count XI – Fraudulent Misrepresentation;

Count XIV – Promissory Estoppel; and Count XVI – Defamation per se against Lake Health.

## II.    Brief Statement of Facts

The parties dispute most of the pertinent facts in this case leaving only a handful of

uncontested facts.  The Rule 56 evidence before the court reveals the following: In May 2018,

Defendant Lake Hospital System, Inc. ("Lake Health") hired a recruiting agency, Action

Management, to fill the position of Director of Utilization Review.  Action Management's

recruiter, Dale Chorba, recommended Wellington for the position at Lake Health.

Wellington interviewed with Defendant Phillip Brooks on July 26, 2018.  Shelly Lamp,

the contractor who was temporarily performing the duties of Director of Utilization Review,

participated in a portion of the interview.  Brooks Depo. p. 72, ECF Doc. 95-3 at 2.  According

to Wellington, Brooks told her a disturbing personal story of a sexual nature during the

interview.  Wellington Depo. p. 78-79, ECF Doc. 110-10 at 5-6.

Following the interview, Brooks sent a couple of e-mails to Dale Chorba that included

the following statements:  "I think I'm in love… she's a female Phillip Brooks.  Gotta control her

but exactly what I'm looking for….." and "Just sent her off with the lady she will replace.  She

asked to see and meet some of the folks.. cool.  Why not, have a go… Married to a brotha, our kids look alike, karma.  Only concern is containing her attitude."  ECF Doc. 110-3 at 112-113.

Wellington began working at Lake Health on August 21, 2018.  Brooks Depo. p. 200, ECF Doc. 95-3 at 2.  Defendants argue that Wellington was not qualified to do the job and that she displayed inappropriate and erratic behavior in her new position at Lake Health.  Lake Health contends that it terminated Wellington's employment for these reasons.  However, Wellington cites statements made by Brooks and others that they were happy with her performance and that she was doing a good job.  See e.g., Brooks Depo. at 104, 139-140, 142, ECF Doc. 110-5 at 15, 17-19.

Wellington alleges that Brooks made numerous humiliating statements to her, many of which were sexual in nature.  She also reports that he once put his hand on her shoulder and tried to look down her shirt.  She claims that he asked her to sit on his lap and reminded her that he had the authority to fire her.  She states that she attempted to report Brooks's behavior to human resources on September 27, 2018 by calling Kimberly Lehotsky.  On October 5, 2018, Brooks met with Wellington and terminated her employment.  Wellington argues that she was terminated in retaliation for the attempted reporting of Brooks's behavior to human resources.  Shortly after she was terminated, Wellington sent several emails to Craig Ghidotti, the vice president of human resources.  ECF Doc. 95-12.  On October 9, 2018, Wellington told Mr. Ghidotti that she was going to contact the EEOC.  Id.

About three weeks after firing Wellington, on October 25, 2018, Lake Health approved Wellington's request to observe a Lake Health physician, Dr. Mihaela Donca, as part of her clinical rotations for a nurse practitioner certification.  Id.  On November 27, 2018, Lake Health employee, Jessica Cudo, emailed Human Resources Director Tiffany Olin regarding a phone call

from Stacey Wellington.  Mr. Ghidotti claims that, shortly after he reviewed the correspondence from Jessica Cudo, he decided that Wellington should not be permitted to conduct her clinical rotation at Lake Health and communicated this to Lake Health's attorney.  *Id.*  However, Wellington claims that this information was not communicated to her.  She received several communications from Lake Health in December 2018 and early 2019 regarding her rotation.  On March 4, 2019, she received an email stating that permission had been granted for her to observe Dr. Donca.  ECF Doc. 110-16.  On March 5, 2019, she completed rounds and observed with Dr. Donca.  Later that day, Lake Health sent an email stating that permission to observe had been cancelled.  *Id.*

## III.    Pleaded Claims

Wellington filed this lawsuit on April 25, 2019 against Lake Health and Phillip Brooks. Wellington's second amended complaint asserts the following claims:  Count I – wrongful termination, whistle blower pursuant to Ohio Rev. Code § 4113.52; Count II – wrongful termination under whistle blower claim; Count III – sexual harassment/gender discrimination; Count IV – retaliation/reporting harassment under Ohio Rev. Code § 4112.02, et seq.; Count V – retaliation under Title VII; Count VI – negligent hiring/retention (against Lake Health); Count VII – civil conspiracy; Count VIII – tortious interference with contractual relationships; Count IX – tortious interference with business relationships; Count X – fraud in the inducement; Count XI – fraudulent misrepresentation; Count XII – breach of contract; Count XIII – intentional infliction of emotional distress; Count XIV – promissory estoppel; Count XV – defamation/defamation per se (against Brooks); Count XVI – defamation/defamation per se (against Lake Health).  ECF Doc. 34.

## IV.    Standard of Review

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct.2505, 91 L.Ed. 2d 202 (1986).  As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.,* 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted); see also Fed. R. Civ. P. 56 (e)(2).  As the Supreme Court has explained, "[the non-moving party] must do more than simply show that there is metaphysical doubt as to the material facts." *Matsushita Elec., Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585-86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).  As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

In determining whether genuine issues of material fact exist, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson,* 477 U.S. at 255.  In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of any genuine issue of material fact." *Celotex v. Catrett,* 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); see also Fed. R. Civ. P. 56(c), (e).  However, when the moving party has met this initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with specific facts showing a genuine dispute of material fact for trial. Fed R. Civ. P. 56(c), (e).

## V.     Law & Analysis

### A.     Whistleblower Claims – Counts I and II

Defendants move for summary judgment on Wellington's whistleblower claims in Counts I and II.  It is not necessary to analyze defendants' arguments because Wellington concedes she has abandoned these claims.  ECF Doc. 110 at 23.  Accordingly, the court will grant summary judgment to defendants on Counts I and II.

### B.     Count III – Sexual Harassment/Gender Discrimination/Hostile Work Environment

Defendants move for summary judgment on Count III, arguing that much of the evidence on which Wellington relies is inadmissible and does not show "severe" or "pervasive" sexual harassment that altered the condition of her employment.  ECF Doc. 95-1 at 25-33.

A hostile-work-environment claim based on sexual harassment requires an employee to show that: (1) she was a member of a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment complained of was based on sex; (4) the charged sexual harassment created a hostile work environment; and  (5) the employer is liable.  *Randolph v. Ohio Dep't of Youth Servs.*453 F.3d 724, 733 (6th Cir. 2006), quoting *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999) ("'The elements and burden of proof are the same, regardless of the discrimination context in which the claim arises.'" (quoting *Crawford v. Medina Gen'l Hosp.*, 96 F.3d 830, 834 (6th Cir. 1996))).  A hostile work environment occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993) (internal quotation marks and citation omitted).  Both an objective and subjective test must be met; in other words, the conduct must be so severe or pervasive as to constitute a

hostile or abusive working environment both to the reasonable person and the actual victim.  *Id.* at 21-22.

For the most part, defendants' motion focuses on the objective element of the sexual harassment/hostile work environment claim.  Defendants make passing references to Wellington's subjective point of view; for example, they cite an email in which she stated she liked working for Brooks.  However, the evidence shows that Wellington had complained about Brooks's conduct "of a sexual-oriented nature" to at least one other Lake Health employee.  ECF Doc. 94-1 at 36.  There is a genuine dispute of fact on the subjective component of Wellington's claim.

Regarding the objective element, defendants argue that they are entitled to summary judgment because, even when the court construes the facts in a light most favorable to Wellington, she has not shown that Brooks's conduct was so severe or pervasive that it created an objectively hostile work environment.  After carefully considering the facts Wellington has cited and controlling Sixth Circuit precedent, the court concludes otherwise.  The facts are in dispute, and a jury should decide whether Wellington has established that her workplace at Lake Health was permeated with discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment.  The court finds that genuine disputes of fact exist on this claim.

Wellington's allegations include:

1) Brooks told her that he used to have sex with employees stating that, "I used to have sex with people out in the car and then just go back right in the office like nothing ever happened."  Wellington Depo. Vol II, at p. 39, ECF Doc. 93-1 at 39.

2) On one occasion Brooks told her to "get your ass into my office."  He then closed the door behind her, had her sit down, came up behind her, put his hand on her

shoulder, looked down her blouse, and asked "are those for me?"  *Id.,* ECF Doc. 93-1 at 40-42.

3)  Another time Brooks came up behind Wellington and grabbed her by the waist to move her aside.  *Id.,* ECF Doc. 93-1 at 57.

4)  Brooks would pass in the hall and intentionally use his belly to bump into her.  *Id.,* ECF Doc. 93-1 at 60.

5)  On two occasions, Brooks asked Wellington to sit on his lap and when she declined he told her, "You're not off your 90 days yet.  I can walk you the hell out of here." Wellington never sat on his lap and responded "whatever" to these comments.  *Id.,* ECF Doc. 93-1 at 64-65.

6)  Another time she dropped a pen and he commented on her butt.  *Id.,* ECF Doc. 93-1 at 73.

7)  He constantly made remarks about her clothing, and asked her to wear tighter clothes so he could see her butt.  *Id.*, at p. 73.

8)  He told her "I can still have kids.  I can give you a baby."  *Id.* at 72.

9)  Asking her to sit on his lap and talk about "what comes up."  ECF Doc. 110 at 25.

10)  Brooks took Wellington's cookie and, in front of other employees, asked "does it look like she needs a fatter a**."  ECF Doc. 93-1 at 15.

11)  When Wellington was talking to male co-workers, Brooks interrupted and said, "She only fu*** black guys."  ECF Doc. 93-1 at 67-68.

To determine whether a workplace is hostile, a court must consider the "totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with an employee's performance.'"  *Smith v. Rock-Tenn Servs., Inc.,* 813 F.3d 298, 309 (6th Cir. 2016) (citing *Randolph v. Ohio Dep't of Youth Servs.,* 453 F.3d 724, 733 (6th Cir. 2006)).  "This analysis includes both an objective and subjective component: would a reasonable person find the work environment hostile or abusive, and did the plaintiff subjectively believe it to be so."  *Artis v. Finishing Brands Holdings, Inc.,* 639 F. App'x 313, 318

(6th Cir. 2016); *Williams v. Gen. Motors Corp.,* 187 F.3d 553, 565 (6th Cir. 1999).  As the United States Supreme Court stated in the context of Title VII:

> Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment - an environment that a reasonable person would find hostile or abusive - is beyond Title VII's purview.  Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.

*Harris,* 510 U.S. at 21-22.

According to Wellington, Brooks harassed her every day.  ECF Doc. 87-1 at 370.  As Wellington describes it, the harassment was frequent.  She only worked at Lake Health for a few weeks and the alleged harassment took place in that time period.

Brooks's conduct could also be considered severe.  Many of the instances of sexual harassment cited by Wellington were inappropriate comments, and some comments must be tolerated in the workplace as "merely offensive."  *Harris,* 510 U.S. at 21.  However, even if Brooks was 'only joking,' Wellington may not have perceived his comments that way.  ECF Doc. 93-1 at 67.  And humor is not a defense under the subjective test if the conduct was unwelcome. *Williams v. GMC,* 187 F.3d 553 (6th Cir. 1999).  Some of Brooks's alleged comments were humiliating, such as taking Wellington's cookie and making a comment suggesting that she shouldn't eat it because her a** was too big, (ECF Doc. 93-1 at 15) or saying that she only "fu*** black guys" in front of other employees.  ECF Doc. 93-1 at 67-68.  Thus, even if much of the alleged harassment was only "comments," some of those comments were humiliating and degrading to Wellington.

Moreover, some of the alleged harassment was physical in nature.  The Sixth Circuit has long held that "harassment involving an element of physical invasion is more severe than harassing comments alone."  *Smith v. Rock-Tenn Servs., Inc.,* 813 F.3d 298, 309 (6th Cir. 2016)

(*citing Randolph v. Ohio Dep't of Youth Servs.,* 453 F.3d 724, 733 (6th Cir. 2006)).  Here, Brooks arguably invaded Wellington's personal space by putting his hand on her shoulder, looking down her blouse and asking "are those for me?"

Finally, Brooks's alleged harassment may have unreasonably interfered with Wellington's work performance.  To show such interference, Wellington "need not prove that [] her tangible productivity declined as a result of the harassment.  [She] need only show that the harassment made it more difficult to do the job." *Davis v. Monsanto Chem. Co.,* 858 F.2d 345, 349 (6th Cir. 1988) (emphasis added).  Here, Wellington was trying to learn how to do a new job in a supervisory role at Lake Health.  According to Wellington, on at least two different occasions, Brooks asked her to sit on his lap and reminded her that he could fire her because she was still in her probationary period.  Although Wellington did not comply with his requests, there is evidence that she was worried about losing her job, and she told Ms. Lamp that she was considering resignation, albeit for a different reason.  ECF Doc. 95-2 at 32.  After drawing all reasonable inferences in Wellington's favor, the court finds that there is a genuine dispute as to whether Brooks's conduct unreasonably interfered with her work performance.

Defendants argue that no one other than Wellington witnessed the harassment alleged in her second amended complaint.  However, defendants do not cite any case law holding that this defeats Wellington's claims.  To the contrary, this suggests that a jury (rather than the court) should decide whether Wellington's allegations are credible.  Defendants also argue that some of the conduct was not sex-based.  However, Wellington's specific allegations are to be considered under the totality of the circumstances, and they need not all be "overtly sexual in nature."
*See Williams v. GMC,* 187 F.3d 553, 565-566 (6th Cir. 1999).

Defendants cite several cases in support of their argument that Wellington's allegations do not arise to the level of an objectively hostile work environment.  They cite *Black v. Zaring Homes,* 104 F.3d 822 (6th Cir. 1997) to support their argument that they are entitled to summary judgment because Wellington's allegations do not establish pervasive and severe harassment creating a hostile work environment.  In *Black,* the magistrate judge denied summary judgment to defendants and the jury reached a verdict for plaintiff on her hostile work environment claim. The Sixth Circuit reversed the jury's verdict, finding that the facts were insufficient to show a hostile work environment.  The court finds that Wellington's allegations reflect more pervasive and severe harassment than was claimed by the plaintiff in *Black.*  All of the alleged harassment against Black was in the form of verbal comments made by various co-workers, and most of the comments were not directed toward her.  Wellington alleges that Brooks, her supervisor, directly harassed *her* every day and his behavior included more than merely offensive comments.

Defendants cite *Stacy v. Shoney's, Inc.,* 1998 U.S. App. LEXIS 6659 (6th Cir. 1998) in which the Sixth Circuit affirmed summary judgment for an employer because plaintiff had not shown that the alleged harassment by her co-worker was sufficiently frequent, severe, physically threatening or humiliating to reasonably interfere with plaintiff's work performance.  *Id.* at *10. Wellington's allegations reflect more pervasive and severe harassment than claimed by the plaintiff in *Stacy.*  The court notes that the plaintiff in *Stacy* expressed satisfaction with her employer's investigation into her allegations, and then voluntarily resigned two days later because she got a different job.

Defendants cite *Curry v. Nestle USA, Inc.,* 2000 U.S. App. LEXIS 18743 (6th Cir. 2000) in which the Sixth Circuit affirmed summary judgment for Curry's employer because she did not show that the harassment was based upon her sex, rather than personal animosity, and that the

11

harassment was not sufficiently pervasive or severe to alter the conditions of her employment or create a hostile or abusive working environment.  In contrast, Wellington has shown there to be a genuine dispute as to the pervasiveness and severity of Brooks's alleged harassment.  Here, Wellington alleges that Brooks's comments were based on sex rather than personal animosity.  By all accounts, Brooks initially seemed to like Wellington and had no personal animosity against her.

Defendants cite *Clark v. United Parcel Serv., Inc.,* 400 F.3d 342, 351 (6th Cir. 2005), in which the Sixth Circuit affirmed summary judgment against one of the plaintiffs but reversed on the other.  The Sixth Circuit held that allegations of three relatively isolated incidents over a two-and-a-half-year period were not enough to overcome summary judgment for Clark's co-plaintiff.  However, Clark's allegations presented a more ongoing pattern of unwanted conduct and attention and the Sixth Circuit reversed the grant of summary judgment on her claims.  *Id.* at 352.  Here, the court finds that Wellington's allegations are more similar to Clark's allegations than to the dismissed claims of Clark's co-plaintiff.

Finally, defendants cite *Hensman v. City of Riverview,* 316 F. App'x 412 (6th Cir. 2009) in which the majority held that Hensman's allegations – that her supervisor had called her voluptuous twice, hugged her three times and grabbed her arm once within a six week period were insufficient to constitute a hostile work environment.  They found that the incidents were isolated.  The dissent concluded summary judgment should not have been granted given the totality of the circumstances.  The difference of opinions in *Hensman* shows how close the call was.  Here, the court finds that Wellington's allegations, if accepted as true, show more frequent and severe harassment than that involved in *Hensman*.

12

The conclusion here is not clear cut.  But as the court construes and applies Sixth Circuit precedent to Wellington's claims,[1] the court finds that Wellington has alleged facts that show more pervasive and severe harassment than was involved in the cases cited by defendants.  After resolving all ambiguities and drawing all reasonable inferences in Wellington's favor, the court finds that there are genuine disputes of fact on her sexual harassment/hostile work environment claim.  Consequently, the court must DENY defendants' motion for summary judgment on Count III.

### C.     Counts IV and V – Retaliation under Ohio Rev. Code § 4112, et seq. and Title VII

Defendants argue that they are entitled to summary judgment on Wellington's retaliation claims because she cannot prove that she would not have been terminated *but for* defendants' retaliation.  To establish a prima facie case of retaliation, Wellington must show, by a preponderance of the evidence, that (1) she engaged in a protected activity under Title VII, (2) her protected activity was known to Lake Health, (3) Lake Health took adverse employment actions against Wellington, and (4) there was a causal connection between the adverse employment action and the protected activity.  *Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013).  "The burden of establishing a prima facie case in a retaliation action is not onerous, but one easily met."  *Mickey v. Zeidler Tool and Die Co.,* 516 F.3d 516, 523 (6th Cir. 2008) (internal quotation marks omitted).

If Wellington establishes a prima facie case, the burden shifts to Lake Health to produce evidence that reflects a legitimate, nondiscriminatory reason for its action.  *Fuhr v. Hazel Park*

---

[1] The court agrees with defendants that the evidence of Brooks's harassment of other individuals of which Wellington was not aware during her employment should not factor into the court's determination of whether Wellington was subjected to a hostile work environment.  The court's decision is based on the facts which Wellington allegedly knew during her employment.  *See, e.g. Barrett v. Whirlpool Corp.,* 556 F.3d 502, 515 (6th Cir. 2009).

13

*School Dist.,* 710 F.3d 668, 674 (6th Cir. 2013).  "If a defendant successfully produces such a legitimate reason, then the burden of production returns to the plaintiff to demonstrate by a preponderance of the evidence that the proffered reason was a mere pretext for discrimination."[2] *Id.* at 675.  Further, the United States Supreme Court has clarified that a Title VII plaintiff must demonstrate "but for" causation to sustain a retaliation claim.

> Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in § 2000e-2(m).  This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.

*Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 186 L. Ed. 2d 503 (2013).

Defendants argue that they terminated Wellington's employment because she had behavioral and performance problems during the first six weeks of her ninety-day introductory period.  On October 2, 2018, Brooks noted the following problems with Wellington in an e-mail to human resources:

- Essentially this can be summarized by an extreme lack of trust
- Employee has negative interactions with team members at all levels of revenue cycle
- The assessment by the consultants have indicated she isn't professional in her language and attire and demeanor
- Recommendation was she needed to be "socialized" then "memorialize" her
- She refuses to listen and frankly does not stop talking
- The momentum and synergy we have developed over the last year is quickly eroding by one person's attitude and demeanor
- Not living up to the core values of Lake Health
- Doesn't possess the basic Excel skills required to perform certain aspects of the job including the preparation of reports, spreadsheets and flowcharts
- I intentionally removed the administrative aspects of the position (completing time cards etc.) because she didn't have the basic skills to complete the task in a timely/accurate manner.
- Very confrontational and overly aggressive during the initial encounter with the Care Coordination staff, the consultant intervened to keep the conversation from escalating
- Unprofessional and not engaging with employees
- Has authored unbecoming, unprofessional emails to peers
- Doesn't appear to think before she speaks

---

[2] This is often referred to as the *McDonnel Douglas* shifting burden formula.

- Drama drama drama as indicated by the email examples

ECF Doc. 98-2 at 2.  Shelly Lamp, the employee who trained Wellington, agreed that these were legitimate problems with Wellington.  ECF Doc. 85-1 at 54-61.  Having set forth legitimate, nondiscriminatory reasons for terminating her employment, Lake Health argues that the burden shifts to Wellington, and that she cannot show that the reasons proffered by Lake Health were a pretext to hide unlawful retaliation.  *See Rogers v. Henry Ford Health Sys.,* 897 F.3d 763, 777 (6th Cir. 2018).  They argue that Wellington cannot show that retaliation was the actual "but for" reason she was fired.

To show that Lake Health's reason for terminating her employment was merely pretext, Wellington must show by a preponderance of the evidence either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate her discharge, or (3) that they were insufficient to motivate discharge."  *Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1084 (6th Cir. 1994), citing *McNabola v. Chicago Transit Authority,* 10 F.3d 501, 513 (7th Cir. 1993);  *Evans v. Jay Instrument and Specialty Co.,* 889 F. Supp. 302 (S.D. Ohio 1995) (extending *Manzer* to Title VII cases).  Defendants argue that Wellington cannot show pretext in any of the three recognized ways.  ECF Doc. 95-1 at 36.

Wellington has not really attempted to show one of the *Manzer* forms of pretext.  Rather, she has argued that Lake Health has not articulated a consistent reason for terminating her.  ECF Doc. 110 at 29.  She cites Lake Health's response to her EEOC complaint stating that it fired Wellington for inappropriate patient complaints but later rescinded that explanation.

Lake Health counters that it mistakenly gave this explanation to the EEOC and has no bearing on whether the reasons given by Brooks in his e-mail and relied upon by Lake Health were "honestly held."  ECF Doc. 113 at 11-12, fn 2.  The court agrees.  Brooks sent his October

2, 2018 email to Lake Health's human resources department *before* Wellington filed her EEOC complaint and does not evidence a later-developed justification for terminating her employment. "Establishing that the employer's reason was a pretext requires that a plaintiff do more than simply impugn the legitimacy of the asserted justification; in addition, the plaintiff must also adduce evidence of the employer's discriminatory animus." *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 804 (6th Cir. 1994), citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 113 S. Ct. at 2751-52 ("[A] reason cannot be proved to be a 'pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason").

After examining the evidence and the parties' arguments, the court finds that Wellington has not produced evidence sufficient to show a genuine dispute of material fact on the question of whether defendants' proffered reason for terminating her employment was a pretext for prohibited discrimination. Defendants are entitled to summary judgment on Wellington's Count IV and V retaliation claims as they relate to the termination of her employment.

Wellington also argues that defendants retaliated against her when they terminated her educational privileges. She states that "there is no doubt" that her educational privileges were terminated because she filed a lawsuit. ECF Doc. 110 at 29. Wellington argues that *Christopher v. Stouder Memorial Hosp.* 936 F.2d 870 (6th Cir. 1991) is "strikingly on point." ECF Doc. 110 at 29. Because Wellington does not fully develop this argument or even explain her reliance on the *Christopher* case, the court will attempt to apply *Christopher* on its own.

The *Christopher* case involved a nurse who was initially approved for limited scrub nurse privileges at the hospital. However, the hospital later revoked the privileges after learning of a lawsuit she previously filed against a former employer. The court found that Christopher had

shown direct evidence of a Title VII violation and was not required to proceed under the *McDonnel Douglas* shifting burden formula.

In *Christopher* and other similar cases, the Sixth Circuit has held that that the *McDonnell Douglas* test and its shifting burdens are "inapplicable [when] the plaintiff presents direct evidence of discrimination." *Blalock v. Metals Trades,* 775 F.2d 703, (6th Cir. 1985); citing *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 105 S. Ct. 613, 622, 83 L. Ed. 2d 523 (1985), *citing International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 358 n.44, 52 L. Ed. 2d 396, 97 S. Ct. 1843 (1977) ("the McDonnell Douglas formula does not require direct proof of discrimination"); *Thompkins v. Morris Brown College,* 752 F.2d 558, 563 (11th Cir. 1985); *Miles v. M.N.C. Corp.,* 750 F.2d 867, 875-76 (11th Cir. 1985); *Bell v. Birmingham Linen Service,* 715 F.2d 1552, 1556 (11th Cir. 1983), cert. denied, 467 U.S. 1204, 104 S. Ct. 2385, 81 L. Ed. 2d 344 (1984) (*McDonnell Douglas* "is not intended to be a Procrustean bed within which all disparate treatment cases must be forced to lie."); *Perryman v. Johnson Products Co.,* 698 F.2d 1138, 1143 (11th Cir. 1983); *Lee v. Russell County Board of Education,* 684 F.2d 769, 774 (11th Cir. 1982).

*Blalock* amplifies the alternative "direct evidence" analysis.  Blalock's employer treated him more favorably when he shared the same religion as his employer.  However, when Blalock later changed his religion, his relationship with his employer also changed, and his employer stopped treating him favorably based on his religion.  *Blalock*, 775 F.2d at 708-709.  These facts were not disputed.  Because there was direct evidence that religious discrimination played a part in the intentional differential treatment of plaintiff, the burden shifted to the employer to show that it would have fired Blalock even in the absence of religious discrimination.  *Id.* at 713.

Direct evidence and the *McDonnell Douglas* formulation are simply different evidentiary paths by which to determine the ultimate issue of defendant's discriminatory intent.  For cases involving direct evidence of discrimination, the Sixth Circuit has held that

> in order to prove a violation of Title VII, a plaintiff need demonstrate by a preponderance of the evidence that the employer's decision to take an adverse employment action was more likely than not motivated by a criterion proscribed by the statute.  Upon such proof, the employer has the burden to prove that the adverse employment action would have been taken even in the absence of the impermissible motivation, and that, therefore, the discriminatory animus was not the cause of the adverse employment action.

*Blalock,* 775 F.2d at 712.

Here, there is no *direct* evidence of a Title VII violation.  As stated at the outset, the parties agree on very few facts.  Defendants have not admitted, and Wellington has not conclusively shown that defendants' decision to rescind her educational privileges was motived, in part, by discrimination proscribed by Title VII.  Rather than citing direct evidence to support her claim, Wellington merely argues that there is "no doubt" that is why her educational privileges were rescinded.  The court is less sure.  Lake Health argues that it rescinded the educational privileges because Wellington called Jessica Cudo, a Lake Health employee and threatened her if she lied to Wellington's attorney.  ECF Doc. 113 at 19.  This justification for rescinding Wellington's privileges comes dangerously close to the lawsuit itself, but the court discerns a distinction.  Lake Health points out that it approved the educational privileges after Wellington filed her EEOC complaint and rescinded them after she called Jessica Cudo.  Wellington does not argue that she *didn't* call Jessica Cudo.  She simply states that there is "no doubt" that Lake Health rescinded her educational privileges because of her lawsuit alone.  There *is* doubt and the burden is on Wellington to show that the justification given by Lake Health is pretext.  She has failed to adduce evidence that does so.

18

Moreover, even if the court found that it was *not* necessary to apply the *McDonnell Douglas* formula here, it is unclear how this would save Wellington's claims.  Lake Health has arguably met the burden of proving that it had legitimate, nondiscriminatory reasons for terminating Wellington's employment and educational privileges.  It has cited numerous reasons why Wellington would have been fired and has provided an explanation for rescinding her educational privileges.  ECF Doc. 98-2 at 2, ECF Doc. 85-1 at 54-61.  Unlike *Blalock,* there is no history of the employer tolerating Wellington's behavior for a significant period of time and then firing her, in part, because of impermissible discrimination.

The *McDonnell Douglas* formula is applicable to this case and Wellington's opposition has not shown that defendants' reasons were mere pretext under one of the *Manzer* scenarios.  After examining the evidence and the parties' arguments, the court finds that Wellington has not produced evidence sufficient to present a genuine issue of material fact on the question of whether defendants' proffered reasons for terminating her employment and rescinding her educational privileges were only pretext for prohibited discrimination.  Because there are no genuine issues of material fact on the pretext element of Wellington's Count IV and Count V retaliation claims, the court must GRANT summary judgment to defendants on those claims.

### D.      Count VI – Negligent Hiring and Retention

Defendants argue that Wellington's negligent hiring and retention claim should be dismissed because she has failed to show that any tort occurred in this case.  In other words, because defendants believe that Wellington has failed to show any sexual harassment, they argue that Lake Health cannot be considered negligent for hiring and retaining Brooks.  Defendants' argument is dependent on this court finding no genuine dispute of material fact on Wellington's sexual harassment claim.  Because the court finds that there *are* genuine disputes of fact on that

claim, defendants' argument on Wellington's negligent hiring and retention claim is built on a faulty foundation and must be denied.  Because defendants have failed to show that there are no genuine disputes of fact on the narrow issue presented for summary judgment, the court must DENY summary judgment on Wellington's Count VI negligent hiring/retention claim.

### E.      Count VII – Civil Conspiracy

In Count VII, Wellington alleges that "Lake Health, its employees and agents colluded, combined and acted in concert to revoke [her] privileges to conduct her practicum at Lake Health with Dr. Donca."  ECF Doc. 34 at 18.  Defendants argue that Count VII of Wellington's second amended complaint should be dismissed because it is well settled that a "corporation cannot conspire with its own agents or employees."  *Hull v. Cuyahoga Valley Joint Vocational School Dist. Bd. Of Educ.,* 926 F.2d 505, 509 (6th Cir. 1991).

Wellington argues that there were more people involved in the conspiracy – such as Dale Chorba, her recruiter, and Shelly Lamp, the independent contractor who trained her.  However, Wellington has offered no evidence to show that Chorba or Lamp were actually involved in the decision to rescind her educational privileges.  Nor does it appear that either of these individuals would have had the authority to terminate Wellington's educational privileges.

Wellington also argues that an exception to the intra-corporate conspiracy doctrine exists when employees act outside the scope of their employment, because an employee committing an intentional tort necessarily acts outside of the scope of his or her employment.  This may be true, but Wellington has not explained who conspired to commit an intentional tort or how that impacted her educational privileges.  Wellington's argument is not fully developed, but it is difficult to see how this exception to the intra-corporate conspiracy doctrine applies to the facts of this case.

Here, it appears that the intra-corporate conspiracy doctrine does apply.  *See Hull,* 926 F.2d at 509.  Lake Health cannot be held liable for conspiring with its own employees and agents to revoke Wellington's educational privileges or terminate her employment.  Wellington has not cited facts to support the existence of a conspiracy among defendants and Chorba or Lamp.  Nor has she explained how her intentional tort argument somehow removes this case from the intra-corporate conspiracy doctrine.  Because the court finds that the intra-corporate conspiracy doctrine applies to the allegations in Count VII of Wellington's second amended complaint, there are no disputes of fact on this claim.  Lake Health could not conspire with itself to revoke Wellington's educational privileges.  The court must GRANT summary judgment to defendants on this claim.

### F.   Count VIII – Tortious Interference with Contractual Relationship

In Count VIII, Wellington asserts a tortious interference with contractual relationship claim.  She alleges that Lake Health interfered with her contractual relationship with Chamberlain college by revoking her privileges at Lake Health and blocking her ability to complete her practicum.  ECF Doc. 34 at 19.  Defendants argue that this claim fails because there is no evidence that they had any knowledge of her contract with Chamberlain or procured a breach.  ECF Doc. 95-1 at 39-40.

The elements of the tort of tortious interference with contract are: (1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) lack of justification, and (5) resulting damages.  *Fred Siegel Co., L.P.A. v. Arter & Hadden,* 85 Ohio St.3d 171, 1999-Ohio-260, 707 N.E.2d 853, paragraph one of the syllabus.  Lake Health summarily argues that there is no evidence to

support the second  and third elements of the claim – that Lake Health knew of a relationship

between Wellington and Chamberlain college and/or that it procured its breach.

Wellington responds that Lake Health *was* aware of her relationship with Chamberlain

College as reflected in a Lake Health Memo dated October 25, 2018.  ECF Doc. 110-16 at 4.

She also alleges that she sent her student rotation agreement to Lake Health on January 3, 2019.

*Id.* at ¶ 13.  Lake Health replies that Wellington has not attached the rotation agreement, proven

the actual existence of a contract or explained how denying educational privileges at Lake

Health's facilities actually caused her to breach it.  ECF Doc. 113 at 21.  These new arguments

were not asserted in Lake Health's motion for summary judgment on this claim – only in Lake

Health's reply.

Wellington responded to Lake Health's original arguments in accordance to the

requirements of Fed. R. Civ. P. 56(c).  The court finds that Wellington's cited materials show

that a genuine dispute of fact exists on the second and third elements of her tortious interference

with contract claim.  There is a genuine issue of fact as to whether Lake Health had knowledge

of her alleged contract with Chamberlain college and whether, by revoking her educational

privileges and making it impossible for her to complete her rotation, it procured her breach.

Because Lake Health offered no argument on the other elements of Count VIII, it would be

improper for the court to grant summary judgment on new arguments raised initially in Lake

Health's reply, such as whether an agreement actually existed.  The court must DENY

defendants' motion for summary judgment on Count VIII.

### G.  Count IX – Tortious Interference with Business Relationship

Wellington's Count IX claim alleges that Lake Health interfered with her business

relationship with Dr. Donca.  The tort of interference with business relationships "generally

22

occur[s] when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another, or not to perform a contract with another." *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council,* 73 Ohio St. 3d 1, 14, 1995-Ohio-66, 651 N.E.2d 1283.  Here, Wellington alleges that Lake Health interfered with her business relationship with Dr. Donca when it revoked her educational privileges.

Defendants argue that Dr. Donca was an employee of Lake Health and, as such, could not be considered a *third party* for purposes of Wellington's tortious interference with business relationship claim.  Wellington contends that defendants are basically asserting another intra-corporate conspiracy doctrine defense to this claim.  She argues that defendants have not cited any case law holding that such a defense applies to a tortious interference with business relationship claim.

Lake Health's reply cites *Dolan v. Gloucester,* 173 Ohio App.3d 617, 2007-Ohio-6275, 879 N.E.2d (4th Dist.), arguing that a person cannot tortiously interfere with his own business relationship.  However, in *Dolan,* the court held that the commissioner could not interfere with his own business relationship.  *Dolan* does not address whether an employer can interfere with a business relationship between the plaintiff and of one of its employees.

Neither of the parties has cited controlling case law dispositive of the issue raised in Lake Health's motion.  Fed. R. Civ. P. 56(a) provides:

> A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

In the context of a Civil Rule 56 motion, the burden is on the moving party to initially show that there is no genuine dispute as to any material fact.  Lake Health moves for summary judgment on a narrow issue of law – that, as a matter of law, it cannot interfere with a business relationship with "itself" and that Dr. Donca is considered a part of the hospital for purposes of this claim.  However, Lake Health has not cited any case law holding that Dr. Donca must be considered a part of the hospital in this context.  Plainly, Wellington is not alleging her business relationship with Dr. Donca was actually with Lake Health (with Dr. Donca acting as an agent for Lake Health).

The court agrees with Lake Health that the intra corporate conspiracy doctrine applies to Wellington's conspiracy claim.  However, it is unclear whether this doctrine governs this claim as well.  The hospital employs many people; it is conceivable that a tortious interference with business relationship claim could arise in some situations when a hospital interferes with a business relationship one of its employees has with a third party.  By failing to cite case law applying the intra corporate doctrine to a tortious interference with business relationship claim of this sort, Lake Health has failed to meet its burden on the narrow argument it has presented on this claim.  Upon due consideration of the parties' arguments and applicable case law, the court finds that Lake Health has failed to show that it is entitled to judgment as a matter of law on Wellington's tortious interference with business relationship claim.  For this reason, the court must DENY defendants' motion for summary judgment on Count IX of Wellington's second amended complaint.

### H.    Count X – Fraud in the Inducement

Wellington's second amended complaint asserts a claim for fraud in the inducement against Lake Health for inducing her to enter into a clinical rotation with Dr. Donca.  To

24

successfully assert a prima facie case for fraudulent inducement, Wellington must establish: (1) a representation material to the transaction was made; (2) it was made falsely, with knowledge that it was false or with utter disregard or recklessness regarding whether it was false; (3) the intent to mislead another into reliance on that representation; (4) justifiable reliance on the representation; and (5) injury proximately resulting from that reliance. *Barnes v. Reserve Energy Exploration*, 7th Dist. Belmont No. 14 BE 0013, 2016-Ohio-4805, ¶20.  Defendants argue simply that Wellington does not allege that Lake Health induced her to enter into a contract or agreement for the benefit of Lake Health.  ECF Doc. 95-1 at 41.  As Wellington points out, this is an inaccurate statement.  Wellington does *allege* that Lake Health induced her into entering into a relationship. In the context of a Fed. R. Civ. P. 56 motion, Lake Health should have argued that no genuine dispute of fact existed on this essential element of Wellington's claim.

Wellington argues that Lake Heath generally benefits by allowing nursing students to complete their rotations at Lake Health.  She argues that she relied on Lake Health's representation that she could complete her clinical rotations at Lake Health.  Lake Health replies that there is no evidence supporting Wellington's argument that Lake Health somehow benefitted from allowing her or other students to complete clinical rotations at the hospital.  It also argues that Wellington has failed to show that genuine issues of material fact exist as to whether Lake Hospital *induced* Wellington to seek approval to do her rotation there.

After considering the Rule 56(c) materials that the parties have submitted, the court finds that there are no genuine disputes of material fact on an essential element of Wellington's fraudulent inducement claim.  The facts establish that *Wellington* asked Dr. Donca if she could complete her clinical rotation with her.  ECF Doc. 110-16 at ¶ 9, 12.  Lake Health initially approved this request.  ECF Doc. 110-16 at ¶ 6.  These facts do not show that Lake Health made

a representation to Wellington with an intent to mislead and cause her reliance.  She has offered

no evidence to establish that Lake Health *induced* her to complete her clinical rotations at Lake

Health.  Even though Lake Health's argument on this claim is poorly stated, the court finds that

it is entitled to summary judgment on Count IX of Wellington's second amended complaint.[3]

Because there is no genuine dispute that Lake Hospital induced Wellington to do her clinical

rotation at Lake Hospital, the court must GRANT summary judgment to defendants on this

claim.

### I.      Counts XI and XIV – Fraudulent Misrepresentation and Promissory Estoppel

Wellington's Counts XI and XIV allege that she relied on statements from Lake Health

that she could complete her clinical rotation with Dr. Donca at Lake Health.  Lake Health's

motion for summary judgment asserts only one argument on these claims – that Wellington's

reliance on its representation was objectively unreasonable.  ECF Doc. 95-1 at 42.  Defendants

point to the fact that Wellington knew that she was not permitted on Lake Health property at the

time she "relied" on Lake Health's approval of her clinical rotations with Dr. Donca.  ECF Doc.

93-1 at 118 (Wellington testified that she was "afraid to be on their property because they told

me never to step foot on their property again.")

Wellington responds that it is absurd of Lake Hospital to argue that its own statement

approving her educational privileges was not worthy of reliance.  She argues that her attorney

attempted to contact Lake Health to confirm its approval of the clinical program and

Wellington's rotation beginning March 5, 2019 but received no response.  ECF Doc. 110-8 at 2.

Wellington's affidavit also includes the following statements:

---

[3] Wellington had notice that Lake Health was challenging the evidence on the inducement element of this claim.  Thus, she was on notice to come forward with her evidence on this claim.  *See Delphi Auto Sys., LLC v. United Plastics, Inc.* 418 F. App'x 374, 379-380 (6th Cir. 2011).

11.  On December 27, 2018, I emailed Michelle Pohl and told her I still had not received the paperwork she said she would send. (Exhibit D.)  Michelle Pohl sent me the paperwork later that day.

12.  On December 28, 2018, Michelle Pohl emailed me to state that Dr. Donca contacted her and agreed to allow me to rotate for two 8-week terms. Michelle stated, "please make sure your paperwork indicates start date 3/1/2019 thru the end of 6/30/19."  She then asked that I resend the flu vaccine paperwork and her updated paperwork.

13.  On January 3, 2019, I sent Michelle Pohl at Lake Health the student rotation agreement.

14.  On January 7, 2019, I reached out to Michelle Pohl to make sure she had received her student paperwork and flu vaccine.

15.  On January 9, 2019, I reached out to Michelle Pohl to tell her that I had still not received a response regarding paperwork.  I told them that the school had informed me that Lake Health had requested a drug screen.

16.  On January 10, 2019, Michelle Pohl emailed me and stated, "You will receive approval of your rotation as it gets closer to the start date."

* * *

18.  On January 17, 2019, Michelle Pohl emailed me and asked if I sent my TB and CV for my rotation with Dr. Donca.

19. On February 22, 2019, I contacted Michelle Pohl at Lake Health asking when I would receive my approval letter for the rotations.  Michelle responded and stated that you will be receiving your notice as it gets closer to the date of your rotation.  Probably the week before.

20. On February 27, 2019, I emailed Michelle Pohl and I still had not received my approval letter.

21. On March 14, 2019, Lake Health sent an email stating "permission has been granted to Stacy Wellington to round/observe Dr. M. Donca, effective 3/5 thru 6/30/2018. [sic] (the e-mail should have said 2019).

ECF Doc. 110-16 at 2-3.

Defendants argue that Wellington must reconcile her statements that she was afraid to enter Lake Health's property with her alleged reliance on its communications regarding her

educational privileges.  In the context of a Rule 56 motion, the court disagrees.  Wellington cites

evidence showing that Lake Health's employee, Michelle Pohl, repeatedly communicated with

her regarding her planned rotations with Dr. Donca and confirmed approval in writing on March

14, 2019.  *Id.*  There is a genuine dispute of material fact as to whether it was reasonable for

Wellington to rely on these representations.  The fact that Wellington made statements that may

contradict such reliance equates to a question of fact for the jury to decide.  Because this is the

only argument Lake Health asserted on Counts XI and XIV, and because the court finds that

genuine issues of fact exist on the justifiable reliance element of these claims, the court must

DENY defendants' motion for summary judgment on these claims.

**J.      Count XII – Breach of Contract**

Wellington's Count XII alleges that Lake Health entered into an agreement with her for

her to complete her practicum with Dr. Donca.  ECF Doc. 34 at 21.  Defendants argue that no

such contract existed.  Defendants cite Wellington's responses to requests for admission wherein

she admitted that she did not have a contract with Lake Health.  ECF Doc. 95-14 at 24.

Wellington responds that Michelle Pohl entered into a binding agreement with Wellington that

she was permitted to complete her clinical rotation with Dr. Donca at Lake Health.  She doesn't

explain the apparent contradiction between her admission and her claim.  Defendants counter

that Wellington cannot admit that she did not have a contract with Lake Health and later argue

that she did.

The elements of a claim for breach of contract are the *existence of a contract,*

performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff.

*Jarupan v. Hanna,* Franklin App. No. 06AP-1069, 173 Ohio App. 3d 284, 2007 Ohio 5081, ¶18,

878 N.E.2d 66 (emphasis added).  It is questionable whether there are genuine issues of fact on

28

each of the elements of Wellington's breach of contract claim.  It is questionable whether Michelle Pohl had the authority to enter into a binding contract involving Wellington's educational privileges at Lake Health.  However, the only issue to be decided now is whether a contract existed based on Wellington's admission that she has no contract with Lake Health.

Lake Health's Request for Admission No. 152 stated, "Admit that you have no contract with Lake Health."  Wellington responded, "Admit."  She now claims that she had an agreement to complete her educational rotation with Dr. Donca.  There may be an explanation how her admission is compatible with this claim, but Wellington has not provided it.  And because a request for admission is involved, this is more than a question of fact.

Fed. R. Civ. P. 36(b) states that "a matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended."  Wellington has not moved to withdraw or amend her admission.  Nor has she explained how her claim for breach of contract *against* Lake Health is compatible with her admission that she had no contract *with* Lake Health.  Because Wellington admitted that she had no contract with Lake Health, this fact is conclusively established – no contract existed.  ECF Doc. 95-14 at 24.

Because there are no genuine issues of material fact on an essential element of Wellington's breach of contract claim, the court must GRANT summary judgment to defendants on Count XII of Wellington's second amended complaint.

**K.  Count XIII – Intentional Infliction of Emotional Distress ("IIED")**

Wellington's Count XIII alleges that Lake Health intentionally caused her serious emotional distress by revoking permission to complete her clinical rotations at Lake Health the day after she began doing them.[4]  ECF Doc. 34 at 22.  Defendants argue that there are no

---

[4] Defendants argue that Wellington's sexual harassment claims cannot be the basis for an IIED claim, and Wellington argues that they can.  However, the court notes that Wellington's allegations in her IIED

29

genuine issues of fact as to whether Lake Health's revocation of such privileges can be considered "extreme and outrageous conduct."  Lake Health argues that an IIED claim cannot be based on conduct that a party was legally entitled to perform.  *Morrow v. Reminger & Reminger Co., L.P.A.,* 183 Ohio App.3d 40, 2009-Ohio-2665, 915 N.E.2d 696, ¶ 49 (10th Dist.).

Under Ohio law, a plaintiff claiming intentional infliction of emotional distress must show that "(1) the defendant intended to cause emotional distress or knew or should have known that its conduct would result in serious emotional distress to the plaintiff; (2) defendant's conduct was outrageous and extreme and beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; (3) defendant's conduct was the proximate cause of plaintiff's psychic injury; and (4) plaintiff's emotional distress was serious and of such a nature that no reasonable person could be expected to endure it."  *Ekunsumi v. Cincinnati Restoration, Inc.,* 120 Ohio App. 3d 557, 698 N.E.2d 503, 506 (Ohio Ct. App 1997); *see also Yeager v. Local Union 20,* 6 Ohio St. 3d 369, 6 Ohio B. 421, 453 N.E.2d 666 (Ohio 1983).

Wellington cites *Returto v. Berea Moving Storage & Logistics,* 2015-Ohio-2404, 38 N.E.3d 392, ¶¶ 65-66 (8th Dist.) in which the state court of appeals found that the trial court erred in granting summary judgment on plaintiff's IIED claim.  But the defendant's conduct in *Returto* was more outrageous and extreme than what is claimed in this case.  He was part owner of the small company Returto worked for, he made constant harassing comments to her, told her he loved her, asked her how she felt about him, touched her, brushed up against her, made excuses to be near her, and followed her around.  The court agrees that his conduct could have

---

claim are limited to Lake Health's conduct in revoking her educational privileges.  ECF Doc. 34 at 22. Nonetheless, the court finds that neither Wellington's termination nor the revoking of her educational privileges reach the level of extreme and outrageous conduct required for an IIED claim in Ohio.

been considered utterly intolerable in a civilized community.  Moreover, Reteurto complained about this harassing behavior and received little help from her employer.  After she complained, the harassment continued, and she ultimately quit her job to get away from the perpetrator.

As stated already, there is a genuine dispute of fact on Wellington's sexual harassment/hostile work environment claim, but it was a close-call.  The court cannot say that Brooks's alleged behavior was the sort of extremely atrocious and outrageous behavior that is "utterly intolerable in a civilized community."  *See Ekunsumi,* 698 N.E.2d at 506.  Nor can such be said about Lake Health's decision to revoke Wellington's educational privileges.  As a matter of law, the conduct alleged by Wellington, even if based on impermissible discrimination, does not rise to the level of 'extreme and outrageous conduct' required for an IIED claim.  Defendants are entitled to summary judgment on Count XIII of Wellington's complaint.  *See Godfredson v. Hess & Clark, Inc.,* 173 F.3d 365, 376 (6th Cir. 1999).  Because there are no genuine issues of material fact on the extreme and outrageous element of Wellington's IIED claim, the court must GRANT summary judgment to defendants on that claim.

### L.      Count XVI – Defamation per se (against Lake Health)

In Count XVI, Wellington claims that Lake Health employee, Maria Bongiovanni, falsified her separation form by marking "does not meet" expectations for every category of performance.  She argues that these statements were false and represent defamation per se because they tend to injure Wellington in her trade or occupation.  Defamation,[5] which includes

---

[5] In order to be actionable per se, the alleged defamatory statement must fit within one of four classes: (1) the words import a charge of an indictable offense involving moral turpitude or infamous punishment; (2) the words impute some offensive or contagious disease calculated to deprive a person of society; (3) the words tend to injure a person in his trade or occupation; and (4) in cases of libel only, the words tend to subject a person to public hatred, ridicule, or contempt.  *Schoedler v. Motometer Gauge & Equip. Corp.*, 134 Ohio St. 78, 84, 15 N.E.2d 958 (1938) (setting forth the three classes that constitute slander per se); *Bigelow v. Brumley*, 138 Ohio St. 574, 592, 37 N.E.2d 584 (1941) (recognizing the last class and holding that "such words are actionable per se if written, though not if spoken orally").

both slander and libel, is the publication of a false statement "'made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or profession.'" *Jackson v. Columbus*, 117 Ohio St.3d 328, 2008 Ohio 1041, P9, 883 N.E.2d 1060 (quoting *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St. 3d 1, 7, 1995 Ohio 66).  "Slander" refers to spoken defamatory words, while "libel" refers to written or printed defamatory words.  *Matikas v. Univ. of Dayton,* 152 Ohio App.3d 514, 2003 Ohio 1852, ¶27, 788 N.E.2d 1108.

Lake Health argues that it is entitled to summary judgment on Wellington's defamation per se claim because Wellington has not identified any third party to whom Lake Health published the separation form or any other defamatory statement.  ECF Doc. 95-1 at 34.  The narrow issue raised by Lake Health's motion is whether publishing false statements to employees in the hospital constituted publication to third parties.  Lake Health argues that it did not and, consequently, that Wellington cannot prove the publication element of her defamation claim.

Lake Health cites *Cooper v. Foster,* 10th Dist. Franklin No. 88AP-326, 1989 Ohio App. LEXIS 567 (Feb. 14, 1989) in support of its argument.  In *Cooper,* however, the court only held that communication *with the plaintiff* could not be considered a publication to a third party.  It also found that there was no evidence that any defamatory statements were made to any member of the local union for which plaintiff had previously worked.  *Id.* at *8.  The *Cooper* case did not actually hold that statements to the local union members could not, as a matter of law, have been defamatory; it held that there was no evidence of any such statements.

Wellington argues that *Cooper* does not support Lake Health's argument.  The court agrees.  However, Wellington has not cited any other case law in support of her argument that

statements to other Lake Health employees could satisfy the publication element of her defamation claim.  Lake Health's reply cites a district court case from the Middle District of Tennessee applying Tennessee law.  *James v. Tavern,* No. 3:17-cv-1153, 2018 U.S. Dist. LEXIS 118100 at *11 (M.D. Tenn., June 15, 2018).  As with some of the other claims, neither party cites controlling case law dispositive of the issue raised in Lake Health's motion.

In the context of a Civil Rule 56 motion, the burden is on the moving party to initially show that there is no genuine dispute as to any material fact.  Lake Health has not argued that it did not publish defamatory statements about Wellington.  Rather, it argues that she cannot prove that it published them to people outside of its organization.  Lake Health is a hospital with thousands of employees – including employees who may not work at Lake Health for their entire careers but may move elsewhere within the medical community.  Thus, if Lake Health were permitted to make false statements about Wellington within its own organization, it is reasonable to infer that such defamation could ultimately have a significant impact on Wellington's ability to obtain employment in the medical community.  Holding that false statements to an organization's own employees could not be considered defamation as a matter of law would effectively license employers to defame their terminated employees without fear of recourse.  This, in turn, would interfere with an employee's ability to bring a defamation lawsuit against any former employer.  This may be the reason that Lake Health has been unable to identify controlling case law on this issue.  Because Lake Health has the burden in this context and has failed to show it is entitled to judgment as a matter of law, the court must DENY summary judgment on Wellington's claim for defamation per se against Lake Health as alleged in Count XVI of her second amended complaint.

**VI.     Conclusion**

After resolving all ambiguities and drawing all reasonable inferences against defendants, the court hereby GRANTS, in part, and DENIES, in part, defendants' motion for summary judgment. ECF Doc. 95.  As explained above, the court GRANTS summary judgment to defendants on the following claims:

Count I – Wrongful Termination, Whistle Blower Pursuant to Ohio Rev. Code § 4113.52;

Count II – Wrongful Termination, Whistle Blower;

Count IV – Retaliation/Reporting Harassment under Ohio Rev. Code § 4112, et seq.;

Count V – Retaliation under Title VII;

Count VII – Civil Conspiracy;

Count X – Fraud in the Inducement;

Count XII – Breach of Contract; and

Count XIII – Intentional Infliction of Emotional Distress.

The court DENIES summary judgment to defendants on the following claims asserted in Wellington's second amended complaint:

Count III – Sexual Harassment/Gender Discrimination;

Count VI – Negligent Hiring/Retention;

Count VIII – Tortious Interference with Contractual Relationship;

Count IX – Tortious Interference with Business Relationship;

Count XI – Fraudulent Misrepresentation;

Count XIV – Promissory Estoppel; and

Count XVI – Defamation per se against Lake Health.

34

These claims, along with Count XV - defamation against Brooks[6], will remain pending before the court.

      The final pretrial scheduled for **March 2, 2020 at 10:00 a.m.** is CONFIRMED.

      IT IS SO ORDERED.

Dated: February 24, 2020

                                   Thomas M. Parker
                         United States Magistrate Judge

---

[6] Defendants did not move for summary judgment on the defamation claim against Defendant Brooks.